```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/08/10
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
MIGUEL DEVISON,

                    Petitioner,

          -against-                    09 Civ. 1031(DAB)(JLC)
                                       ADOPTION OF REPORT
                                       AND RECOMMENDATION
RAYMOND J. CUNNINGHAM,                 AND DENIAL OF ORDER
                                       TO SHOW CAUSE
                    Respondent.
----------------------------------X


                    I. BACKGROUND

     Pursuant to 28 U.S.C. § 2254, pro se Petitioner Miguel

Devison ("Petitioner") petitions this Court seeking a writ of

habeas corpus under 28 U.S.C. § 2254 (the "Petition") challenging

his June 24, 2004 conviction and sentence in New York State

Supreme Court, New York County.  A jury convicted Petitioner of

Conspiracy in the Second Degree under N.Y. Penal Law § 105.15 and

Criminal Sale of a Controlled Substance in the Third Degree under

N.Y. Penal Law § 220.39.  The state court sentenced Petitioner to

separate consecutive prison terms of eight to twenty-four, and

two to six years, which he is currently serving.  On October 15,

2010, United States Magistrate Judge James L. Cott submitted a

Report and Recommendation ("the Report") to this Court,

recommending that the Petition be denied in its entirety.

Magistrate Judge Cott also recommended that this Court decline to

1

issue a certificate of appealability. On October 26, 2010, Petitioner filed timely objections to the Report (the "Objections").[1]

Petitioner's specific Objections to Magistrate Judge Cott's Report are as follows: (1) the trial court failed to conduct an inquiry of a sworn juror who spoke with a lead police witness during trial; (2) the trial court failed to dismiss a juror whose aunt lived in the building where the conspiracy took place; and (3) Petitioner was denied effective assistance of counsel when his defense counsel failed to makes motions to, (a) conduct a inquiry of the sworn juror who was observed interacting and conversing with a lead prosecution witness during trial, and (b) remove a juror that was related to the sixth degree to a person that lived in the building where the alleged conspiracy occurred.[2]

For the reasons below, the Court fully adopts Magistrate Judge Cott's Report, denies Petitioner Miguel Devison's Petition

---

[1]     Under the prison mailbox rule, <u>pro</u> <u>se</u> prisoner's objections are deemed filed at the moment he gave it to prison officials. <u>See</u> <u>Noble v. Kelly</u>, 246 F.3d 93, 97 (2d Cir. 2001).

[2]     In Footnote 1 of his Objections, Petitioner argues he is not "abandon[ing] any claims not specifically addressed [in his Objections]." The Court reviews all portions of Report that are not specifically addressed in Petitioner's Objections for clear error. <u>Advance Coatina Tech Inc. v. LEP Chem Ltd.</u>, 142 F.R.D. 91, 94 (S.D.N.Y. 1992).

for habeas corpus in its entirety and declines to issue a
certificate of appealability.  In addition, the Court denies as
moot Petitioner's November 29, 2010 (file-stamped December 6,
2010) Order to Show Cause for an Injunction and Restraining Order
requesting that New York State correctional and/or parole
officers be restrained from "allowing INS to gain custody of
petitioner until the outcome of petitioner's conviction is
finalized."

## II. FACTS AND PROCEDURAL HISTORY

The facts and procedural history are set forth in Magistrate
Judge Cott's Report and will not be reiterated here.  (See
Report, Docket No. 20.)

## III. DISCUSSION

A. General Legal Standard

Pursuant to 28 U.S.C. § 636(b)(1)(c), "[w]ithin ten days
after being served with a copy, any party may serve and file
written objections to such proposed findings and
recommendations." The District Court is required under 28 U.S.C.
§ 5636(b)(1)(C) to make a "de novo determination of those
portions of the report or specified proposed findings or

recommendations to which objection is made."  Moreover, the court may accept any portion of a magistrate's report and recommendation to which no objection has been made as long as there is no clear error on the face of the record.  <u>Advance Coatina Tech Inc. v. LEP Chem Ltd.</u>, 142 F.R.D. 91, 94 (S.D.N.Y. 1992).

Where a party only raises general objections, "a district court need only satisfy itself there is no clear error on the face of the record." <u>Id.</u>; <u>see also</u> <u>Brown v. Peter</u>, 1997 U.S. Dist. LEXIS 14718, at *7 (N.D.N.Y. Sep. 19, 1997).  Indeed, "objections that are merely perfunctory responses argued in an attempt to engage the district court in rehashing of the same arguments set forth in the original petition will not suffice to invoke <u>de</u> <u>novo</u> review of the magistrate's recommendations." <u>Vega</u> <u>v. Artuz</u>, 2002 U.S. Dist. LEXIS 18270, *3 (S.D.N.Y. Sept. 30, 2002). Such objections "are frivolous, general and conclusory" and would "reduce the magistrate's work to something akin to a meaningless dress rehearsal." <u>Id.</u> (internal citations and quotations marks omitted).

After conducting the appropriate level of review, the Court may then accept, reject, or modify, in whole or in part, the

findings or recommendations made by the magistrate. 28 U.S.C. § 636(b)(1)(c); see also Local Civil Rule 72.1(d).


B. Petitioner's First Objection: The trial court failed to conduct an inquiry of a juror who spoke with a lead police witness during trial

In his first objection, Petitioner contends that during Petitioner's trial, Juror Ferdinand Rivera had a conversation with "the prosecution's leading police witness," Detective Richard Canelo, outside the Courtroom. (Objections ¶ 9.)  Upon discovery of the conversation, the trial court spoke to Det. Canelo on the record before deciding that the contact between Juror Rivera and Det. Canelo had no impact on the proceedings or Juror Rivera's ability to continue as a juror. (Objections ¶ 11.) However, Petitioner contends that the trial court should have conducted a separate inquiry with Juror Rivera regarding his interaction and conversation with Det. Canelo. (Objections ¶ 15.) As required by 28 U.S.C. § 5636(b)(1)(c), the Court will conduct a de novo review of Magistrate Judge Cott's findings that relate to Petitioner's first objection to the Report.

After opening statements, Det. Canelo informed the court, outside of the presence of the jury, that he had spoken with Juror Rivera in the hallway earlier in the day. (Trial Tr. at 5.)

The conversation began with Juror Rivera remarking that Det. Canelo "wasn't here yesterday," to which Det. Canelo responded that he was "a detective on one of the cases." (<u>Id.</u>) Juror Rivera then "said something about the trains being delayed; about the weather." (<u>Id.</u>) Juror Rivera said he was a paramedic and asked where Det. Canelo worked.  Det. Canelo responded that he worked in Washington Heights, and the conversation ended. (<u>Id.</u>)

No other jurors were present, and the conversation did not touch on the case. (<u>Id.</u>) Det. Canelo did not know that Juror Rivera was a juror. (<u>Id.</u> at 6.)

Counsel for codefendant Jose Luis Carlos asked the trial court to question Juror Rivera about the conversation, but the trial court declined to do so, reasoning that it did not "like singling out jurors" and that it was satisfied on this record that nothing inappropriate took place, especially considering that there was no discussion about the case. (<u>Id.</u>) Carlos's counsel then requested that the court remove Juror Rivera from the jury, arguing that Juror Rivera was "ingratiating himself with the detective." (<u>Id.</u> at 7.) The court declined, pointing out that Det. Canelo had not told Juror Rivera that both men were involved with the same case. (<u>Id.</u>)

6

Petitioner's trial counsel asserted that Juror Rivera would recognize Det. Canelo when Det. Canelo testified and would have formed an opinion about Det. Canelo's credibility based on the fact that "[t]hey had his very friendly, lovely conversation." (<u>Id.</u>) The prosecutor responded that Juror Rivera and Det. Canelo had a "one-way conversation" that would not have allowed Juror Rivera to form an opinion about Det. Canelo. (<u>Id.</u> at 8.) Counsel for codefendant Guillermo Acevedo reiterated the earlier motion to question Juror Rivera. (<u>Id.</u>) The court again declined to do so. (<u>Id.</u>)

### 1. Independent and Adequate State Grounds

As Magistrate Judge Cott noted in his Report, the Second Circuit has stated that ordinarily, federal review is precluded where "the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar." <u>Carrion v. Smith</u>, 549 F.3d 583, 587 (2d Cir. 2008) (quoting <u>Glenn v. Bartlett</u>, 98 F.3d 721, 724 (2d Cir. 1996)).

Here, the Appellate Division concluded that Petitioner's constitutional arguments regarding the trial court's determination concerning Juror Rivera were not preserved for

appellate review because Petitioner's counsel never lodged an objection based on federal constitutional grounds. See People v. Devison, 38 A.D.3d 203, 204, 831 N.Y.S.2d 64, 65 (1st Dep't 2007). The trial transcript confirms that Petitioner's counsel did not specifically assert a federal constitutional basis for Petitioner's objections at trial. (See Trial Tr. at 5-7.)

The Court agrees with Magistrate Judge Cott's analysis that New York Criminal Procedure Law § 470.05 - the statute that requires preservation of issues at trial - is an independent and adequate state procedural bar to Petitioner's claims. See Garcia v. Lewis, 188 F.3d 71, 78-79 ("[W]e have observed and deferred to New York's consistent application of its contemporaneous objection rules.") (citing Bossett v. Walker, 41 F.3d 825, 829 n.2 (2d Cir. 1994)); see also Garvey v. Duncan, 485 F.3d 709, 720 (2d Cir. 2007); Cotto v. Herbert, 331 F.3d 217, 239-41 (2d Cir. 2003); Rhagi v. Artuz, 309 F.3d 103, 106 (2d Cir. 2002) ("Absent a showing of cause and prejudice, it is settled law that an independent and adequate state law ground for a state court conviction cannot be disturbed on habeas.").

In Paragraph 7 of his Objections, Petitioner cites DeBerry v. Portuondo, 403 F.3d 57 (2d Cir. 2005) to support his argument that there was no independent state judgment or procedural bar

8

here as "all six (6) of Petitioner's original claims...contain ambiguous language such as: 'The claims are either unpreserved or were we to review these claims they would be without merit.'"  In DeBerry, the Second Circuit held that where it is "impossible to ascertain with any confidence" if the Appellate Division found a claim procedurally barred, then no independent and adequate state ground bars federal review.  The Court in DeBerry examined the Appellate Division's dismissal of certain claims by the following sentence: "The defendant's remaining contentions are either unpreserved for appellate review...or are without merit." (Emphasis Added.)  However, here, the Appellate Division clearly stated: "Defendant's constitutional arguments regarding the court's determination are unpreserved (see e.g. People v Kello, 96 NY2d 740, 743-744 (2001)), and without merit." (Emphasis Added.)  The distinction between "or" in DeBerry and the word "and" here is paramount.  By using "or" the federal court in DeBerry was unable to ascertain exactly what basis each claim was extinguished by the Appellate Division.  There no such problem here because by using "and," it is clear the Appellate Division is stating that Petitioner's claim is unpreserved.

Even though the Appellate Division found that Petitioner's constitutional claim was unpreserved for state appellate review

9

and procedurally bars Petitioner's claim (see <u>Garcia</u>, 188 F.3d at 82), federal review of Petitioner's claim is still possible if the Appellate Division's application of its rule to the Petitioner's case was unreasonable or "exorbitant." <u>See</u> <u>Garvey</u>, 485 F.3d at 718. This requires an analysis of the <u>Cotto</u> factors found in <u>Cotto v. Herbert</u>, 331 F.3d 217 (2d Cir. 2003)(noting that there are "exceptional cases in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question.").  These factors are: (1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state case law indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had "substantially complied" with the rule given "the realities of trial," and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest.  <u>Id.</u> at 240.

    a. Was the alleged violation actually relied on at trial, and would perfect compliance have changed the trial court's decision; and

    b. Did New York State case law indicate that compliance with the rule was demanded in the present case?

Magistrate Judge Cott's engaged in a comprehensive analysis in finding that the Cotto factors do not require federal review of Petitioner's claim given that the Appellate Division found his claims procedurally barred.  First, Magistrate Judge Cott correctly found that under the first Cotto factor, whether the trial judge "actually relied on" the procedural default here "is less applicable in this case because the lack of a contemporaneous objection would not, almost by definition, be mentioned by the trial court" and "the likely impact of a timely objection involves a certain degree of speculation." Cotto, 331 F.3d at 242-43; see also Ashley v. Burge, 2006 WL 3327589, at *5 (S.D.N.Y. Nov. 3, 2006)(explaining that perfect compliance would have changed the outcome, "is less relevant" in evaluating the failure to preserve a claim.).  Accordingly, as Magistrate Judge Cott found, the first Cotto factor does not suggest that application of the rule was "exorbitant."

As to the second Cotto factor, Magistrate Judge Cott found that New York courts consistently require compliance with the contemporaneous objection rule, except in unique circumstances. See, e.g., People v. Hicks, 6 N.Y.3d 737, 739, 843 N.E.2d 1136, 1138 (N.Y. 2005) (concluding that defendant's contention that

11

trial court failed to conduct probing inquiry of allegedly biased juror was unpreserved in absence of protest to scope or intensity of court's inquiry of juror) (citing C.P.L.R. 470.05(2)); <u>People v. Dandridge</u>, 45 A.D.3d 330, 331, 845 N.Y.S.2d 55, 57 (1st Dep't 2005) (rejecting as unpreserved defendant's claim that trial court failed to make additional inquiry of juror when defendant failed to object to inquiry that trial court made or request additional inquiry). While "unique circumstances" may require federal review of an otherwise adequate state-law ground, Petitioner here offers no special circumstances here. <u>Compare Lee v. Kemna</u>, 534 U.S. 362, 380-88 (2002) (holding that the sudden, unanticipated, and unexplained disappearance of critical, subpoenaed witnesses on the last day of trial may excuse strict compliance with a state rule of procedure) <u>with Garvey v. Duncan</u>, 485 F.3d 709, 719 (2d. Cir. 2007) (quoting <u>Lee</u> and finding no unique circumstances that led to noncompliance).[3]

---

[3]     Petitioner cites <u>United State v. Torres</u>, 128 F.3d 38 (1997) and <u>Remmer v. U.S.</u>, 350 U.S. 377 (U.S. 1956) in arguing that the trial court erred when it refused to interview Juror Rivera. It is clear, however, that both <u>Torres</u> and <u>Remmer</u> are legally and factually distinguishable from this case. <u>Torres</u> is inapposite to the facts presented here and, in fact, the <u>Torres</u> Court strongly reiterates that a trial judge has much discretion in how a court can determine if a juror possesses actual, implied or inferable bias. <u>Torres</u>, 128 F.3d at 43. In <u>Remmer,</u> the Court examined the affect of alleged jury tampering and subsequent interview of a juror by law enforcement – all while that juror was sitting on a panel. This is quite different from

Since there was no "unique circumstances" that caused Petitioner's failure to comply with C.P.L. § 470.05(2), Magistrate Judge Cott is correct that the second <u>Cotto</u> factor does apply and application of the procedural bar was not exorbitant. <u>Garvey</u>, 485 F.3d at 719; <u>see also Lee</u>, 534 U.S. at 382.

> c. Would demanding perfect compliance with the contemporaneous objection rule serve a legitimate governmental interest?

Finally, as Magistrate Judge Cott found, it is clear that Petitioner did not "substantially comply" with the contemporaneous objection rule.  Demanding compliance with C.P.L. § 470.05 serves a legitimate governmental interest: "the interest in allowing the trial court to have the first opportunity to rule on and possibly rectify any alleged legal error." <u>Garvey</u>, 485 F.3d at 720. While Petitioner's counsel did put the trial court on notice regarding his belief that the trial court should question Juror Rivera regarding his conversation with Det. Canelo, Petitioner's counsel's omission of any federal dimension in his comments to the court hindered the furtherance of the court's legitimate governmental interest in requiring compliance

---

the circumstances described in this case, where a juror and a witness engaged in an innocent conversation, unbeknownst of each other's identity, as participants in the same case.

13

with the rule as the trial court could not consider a federal constitutional basis for Petitioner's objection. Thus, Magistrate Judge Cott is correct that the third <u>Cotto</u> Factor does not suggest that the Appellate Division's application of C.P.L. § 470.05 was exorbitant.

As the Appellate Division's decision was based on a ground independent of any federal question and adequate under firmly established and regularly followed state law, Petitioner's claim that the trial court's refusal to question Juror Rivera violated his federal constitutional rights is procedurally barred.

### 2. Cause and Prejudice or Fundamental Miscarriage of Justice

Having examined the <u>Cotto</u> factors, next Magistrate Judge Cott examined whether Petitioner could overcome the procedural bar by showing "the cause standard" applies.  The cause standard requires the petitioner to show that "some objective factor external to the defense impeded counsel's efforts" to raise the claim in state court." <u>McClesky v. Zant</u>, 499 U.S. 467,493 (1991) (quoting Murray, 477 U.S. 478, 488 (1976)); <u>accord</u> <u>Bloomer v. United States</u>, 162 F.3d 187, 191 (2d Cir. 1998). Petitioner has identified no such objective factor external to the defense. Accordingly, the Court need not address the issue of whether

14

Petitioner was prejudiced. <u>See</u> <u>McCleskey</u>, 499 U.S. at 502; <u>Acosta</u>

<u>v. Giambruno</u>, 326 F. Supp. 2d 513, 520 (S.D.N.Y. 2004).

Finally, Magistrate Judge Cott found that Petitioner makes

no showing that failure to consider his claim would result in a

fundamental miscarriage of justice. Magistrate Judge Cott is

correct that Petitioner points to no evidence to suggest that he

is actually innocent, as the record demonstrates that substantial

evidence was presented at trial demonstrating his guilt. <u>See</u>

<u>Murray</u>, 477 U.S. at 495-96.

Accordingly, Petitioner is unable to overcome the procedural

bar of his claim that the trial court's refusal to question Juror

Rivera violated his federal constitutional rights. The Court

fully adopts Magistrate Judge Cott's conclusions on this claim.


C. Petitioner's Second Objection: The trial court failed to
dismiss a juror whose aunt lived in the building where the
conspiracy took place

In his second objection, Petitioner contends that the trial

court erred by refusing to discharge Juror Marla Montalvo after

learning that her aunt lived in the same building as Petitioner,

which also is where part of the conspiracy occurred. (Objections

¶¶ 21-22.) As required by 28 U.S.C. § 5636(b)(1)(C), the Court

15

will conduct a _de novo_ review of Magistrate Judge Cott's findings
that relate to Petitioner's second objection to the Report.

At the end of the day on April 15, 2004, after the
government's first witness concluded his testimony and after the
jury had left the courtroom, a court officer reported that Juror
Marla Montalvo had told the officer that her aunt lived at 552
West 146th Street, one of the buildings in which Petitioner and
his codefendants worked. (Trial Tr. at 80.)  The officer stated
that she only realized her aunt lived in a building involved in
the case when she "watched the building," presumably on a video
introduced into evidence. (_Id._) The court recalled Juror
Montalvo. In response to the court's questions, Juror Montalvo
stated that she had visited her aunt at 552 West 146th Street,
but that she had not done so since September or October 2003, six
or seven months before Petitioner's trial, when she went in "for
two seconds." (_Id._ at 81.) Juror Montalvo assured the court that
she would not visit the building for the duration of the trial
and that she did not know any of the defendants or witnesses in
the case. (_Id._ at 81-82.) Further, she agreed that she had formed
no opinion about the case based on her visits to the building and
that she had not discussed the matter with any other jurors,
after which she exited the courtroom. (_Id._ at 82.)

16

After Juror Montalvo departed, Petitioner's counsel stated, "Judge, we have an-" but was interrupted by codefendant Effrain Alfonzo's counsel before he could continue. (Id. at 82.) Alfonzo's counsel requested that Juror Montalvo be replaced by an alternate juror, arguing that counsel would not have selected a juror with a relative in 550 or 552 West 146th Street. (Id. at 82-83.)

Codefendant Jose Luis Carlos' counsel declared his concern to be "what [Montalvo had] been told by her aunt, [and] what she's heard about the building." (Id. at 84.) Codefendant Guillermo Acevedo's counsel was concerned that Juror Montalvo had not disclosed the place of her aunt's residence during voir dire. (Id. at 85-86.) After his initial interrupted statement, Petitioner's counsel was silent during this exchange.

The court declined to replace Juror Montalvo with an alternate juror. (Id. at 86.) It noted that Juror Montalvo had not intentionally withheld information during voir dire, but had only realized that her aunt lived in a building involved in the case when she saw an image of the building during the trial. (Id. at 84.) After declining to remove Juror Montalvo, the court adjourned. (Id. at 87.)

17

The court reconvened on April 19, 2004. Codefendant Carlos's counsel then renewed the motion to have Juror Montalvo removed from the jury. (<u>Id.</u> at 94.) He reported that a defendant's family member who had been observing the trial had "recognized [Montalvo] from 146th Street." (<u>Id.</u>) He further stated that Montalvo's aunt had "had confrontations with members of the Acevedo family" and that "it's believed that ... [Montalvo's aunt] filed complaints with the 30th Precinct about what was going on, on that block." (<u>Id.</u>) Alfonzo's counsel asked for a hearing because Juror Montalvo's aunt "may have had a conversation about her complaints, about her living situation with [Montalvo]." (<u>Id.</u> at 97.) Petitioner's attorney took no part in this exchange.

The court denied both the motion to remove Juror Montalvo and the motion for a hearing. (<u>Id.</u>) The Court stated that it did not consider the family member's alleged recognition of Juror Montalvo to be "credible or relevant or probative," reiterating that Juror Montalvo had, in response to the court's questioning, stated that she knew nothing about the case or any name involved with it. (<u>Id.</u> at 95.) If a relative of a defendant could disqualify a juror simply by claiming to recognize her, the court reasoned, a relative would be likely to make such a claim if he

18

felt the trial was progressing in a direction contrary to his
wishes. (Id.) The court further dismissed Alfonzo's counsel's
suggestion that Juror Montalvo and her aunt discussed the drug
dealing at 550 and 552 West 146th Street as "speculation." (Id.
at 97.) The Appellate Division affirmed the trial court's
decision, reasoning that "the juror did not have implied bias
based on th[e] remote fact" that her aunt lived in one of the
buildings in which the drug dealing occurred. Devison, 831
N.Y.S.2d 64, 64-65, 38 A.D.3d 203, 204-5.


### 1. Juror Bias

In order to assess Petitioner's claim, Magistrate Judge Cott
engaged in an analysis of whether Juror Montalvo possessed the
bias necessary to require her to be excused as a juror.   Of
course, "due process does not require a new trial every time a
juror is placed in a potentially compromising situation." Smith
v. Phillips, 455 U.S. 209, 217 (1982) (bias could not be imputed
to juror who submitted, during criminal trial, employment
application with district attorney's office prosecuting the
case). Instead, "[d]ue process means a jury capable and willing
to decide the case solely on the evidence before it, and a trial
judge ever watchful to prevent prejudicial occurrences and to

determine the effect of such occurrences when they happen." Id.
"In reviewing claims of juror bias, the deference due to district
courts is at its pinnacle: 'A trial court's findings of juror
impartiality may be overturned only for manifest error.'"
Skilling v. U.S., 130 S. Ct. 2896, at 2923-24 (2010) (no bias
imputed to jurors who assured trial court that they could be
impartial) (quoting Mu'Min v. Virginia, 500 U.S. 415, 428
(1991)).  In addition, there is a presumption of correctness that
attaches to a trial court's determination of juror impartiality.
See Fama Fama v. Commissioner of Correctional Services, 235 F.3d
804, 813 (2d. Cir 2000).

        Magistrate Judge Cott correctly analyzed the case here with
that of the jurors in Skilling.  Here Juror Montalvo assured the
court that she could remain impartial. (Trial Tr. at 82.) She
stated that she had not visited her aunt's residence in a number
of months, promised she would not go to the building during
trial, and unequivocally agreed that she had neither formed an
opinion about the case based on her visit to the building, nor
mentioned the fact that she had been to 552 West 146th Street to
any other juror. (Id.)  It is clear that the court acted well
within its discretion in its determination that Juror Montalvo
was impartial.  The Appellate Division's conclusion that Juror

20

Montalvo was impartial, and that the court properly declined to replace her, was a proper application of Supreme Court precedent. Accordingly, as Magistrate Judge Cott found, Petitioner's claim is, therefore, meritless.[4]

## D. Petitioner's Third Objection: Ineffective Assistance of Counsel

In his third objection, Petitioner contends that "his conviction was unduly rendered in direct contravention of his rights under the Sixth and Fourteenth Amendments to the United States Constitution because trial counsel failed to make motions for the trial court to: (1) conduct a probing and tactful inquiry of the sworn juror who was observed interacting and conversing with a lead prosecution witness during trial and (2) remove a juror that was related within the sixth degree to a person that lived in the same building where the alleged conspiracy occurred." As required by 28 U.S.C. § 5636(b)(1)(c), the Court

---

[4]      As Magistrate Judge Cott noted, to the extent Petitioner argues Juror Montalvo should have been dismissed pursuant to C.P.L. § 270.20(1)(c), that claim fails as well as the Appellate Division concluded that this argument was "unpreserved" and stated that were it to review the claim, it "would find it to be without merit, ...." Devison, 38 A.D.3d at 205, 831 N.Y.S.2d at 64.  Nothing on the record suggests that this procedural bar should be disturbed as New York's contemporaneous objection rule is an "independent and adequate state ground" that procedurally bars habeas review. (See the Court's reasoning in Section A, supra.)

will conduct a de novo review of Magistrate Judge Cott's findings that relate to Petitioner's third objection to the Report.

To prevail on an ineffective-assistance-of-trial-counsel claim, Petitioner must show: (1) that counsel's performance was deficient; and (2) actual prejudice to the defense.  <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). Petitioner would need to show that trial counsel's conduct fell "outside the range of professionally competent assistance" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> at 694.

As Magistrate Judge Cott concluded, the Court agrees that the record indicates that trial counsel did not perform in a deficient way; and (2) no prejudice to Petitioner can be shown. <u>Strickland</u>, 466 U.S. 668 (1984); <u>see</u> <u>also</u> <u>Robbins</u>, 528 U.S. 259, 285 (2000).

Magistrate Judge Cott found that as to deficiency, both of Petitioner's alleged claims, i.e., the failure of trial counsel to make motions as to Jurors Rivera (speaking to a trial witness) and Juror Montalvo (related to a person that lived where the crime occurred) can not be sustained because as discussed in Sections B and C, <u>supra</u>, they would have been meritless had the

22

trial court considered them.  Indeed, on other grounds,
Petitioner's trial counsel's actions can easily be characterized
as strategic decisions and "virtually unchallengeable."
Strickland, 466 U.S. at 690.  Finally, there is also no evidence
on the record that Petitioner suffered any prejudice from his
counsel's performance.  Id. at 697.

E. Petitioner's General Objections

    Although not specifically addressed in Petitioner's
Objections, Petitioner's Petition also argues the following: (1)
he was deprived of his due process right and his right to an
impartial jury by the trial court's denial of two of his for-
cause challenges to two prospective jurors - Maria Vasquez and
John Davin; (2) the trial court improperly declined to question
Juror Yoiata Ehe after she disclosed she had been robbed during
the course of the trial; (3) the trial court improperly declined
to question Juror Andrea Scheuer before she was discharged when
she informed the trial court she had formed an irrevocable
opinion about defendants' guilt or non-guilt; and (4) the trial
court erred by not giving a multiple conspiracies charge.

    Where a party only raises general objections, "a district
court need only satisfy itself there is no clear error on the

23

face of the record." <u>Advance Coatina Tech Inc.</u>, 142 F.R.D. at 94;
<u>see also</u> <u>Brown</u> , 1997 U.S. Dist. LEXIS 14718, at *7.  After a
review of the Report and the record, the Court is satisfied with
Magistrate Judge Cott's thorough and thoughtful analysis of
Petitioner's remaining claims and arguments and fully adopts
Magistrate Judge Cott's findings.


## IV. CONCLUSION

ORDERED AND ADJUDGED as follows:

1.    The Report and Recommendation of United States
Magistrate Judge James L. Cott, dated October 15, 2010 be and the
same hereby is APPROVED, ADOPTED, and RATIFIED by the Court in
its entirety;

2.    Pursuant to Judge Cott's recommendation, the Court
DENIES Petitioner Miguel Devison's writ, DISMISSES the petition,
and the Court DECLINES to issue a certificate of appealablity;

3.    The Court hereby DENIES as moot Petitioner's November
29, 2010 (date stamped December 6, 2010) Order to Show Cause for
an Injunction and Restraining Order requesting that New York
State correctional and/or parole officers be restrained from

24

"allowing INS to gain custody of petitioner until the outcome of petitioner's conviction is finalized"; and

    4.    The Clerk of the Court is directed to close the docket in the above-captioned case.

    SO ORDERED.

DATED:    New York, New York
            December 8, 2010

                                      DEBORAH A. BATTS
                          United States District Judge